## THE JOSEPH M. CLARK.

(District Court, E. D. Virginia. November 26, 1902.)

1. COLLISION—STEAM VESSELS CROSSING—LEAVING WHARF WHEN ANOTHER VESSEL IS APPROACHING.

> The steamer Belle Horton and the tug Joseph M. Clark were both making regular passenger trips, from a wharf, across Hampton Roads. In the evening, at a time when the Horton was due, and was in fact approaching the wharf, fully lighted up, and only 400 or 500 feet distant, the Clark cast off and started on the return trip, attempting to pass across the bows of the Horton, which, being to the starboard of the Clark, was the privileged vessel, under the navigation rules. A collision resulted, in which the Horton was damaged. Held, that the Clark was in fault, both for leaving the wharf at the time and under the circumstances, and for violation of the rules thereafter; the danger of collision being such as to impose upon her the duty of exercising the greatest care and skill from the time of leaving. Also held, under the evidence, that the Horton was not in fault.

In Admiralty. Suit for collision.

H. L. Lowenberg and H. H. Rumble, for libelant.
Hughes & Little, for respondent.

WADDILL, District Judge. The libel in this case is filed to recover damages sustained in a collision between the Belle Horton, a passenger steamer owned by the libelant, the Norfolk & Atlantic Terminal Company, and the Joseph M. Clark. The collision occurred about 9 o'clock on the night of the 12th of August, 1901, a short distance southwest of the pier owned by the Norfolk & Atlantic Terminal Company, at the terminus of its street car line, at Norfolk on the Roads, on the eastern side of Hampton Roads. At the time of the collision the steamer Belle Horton was owned and used by the Norfolk & Atlantic Terminal Company in the transportation of passengers between Norfolk and Newport News, from the terminus of its street car line, across Hampton Roads, to and from Newport News; and the Joseph M. Clark was temporarily chartered for the same service,—for the carrying of passengers between Norfolk on the Roads and Old Point Comfort, Va. The steamer and the tug thus engaged made hourly trips between the said places, connecting with the Norfolk & Atlantic Terminal Company's street car lines for Norfolk. On the night in question the Joseph M. Clark reached the pier in advance of the Belle Horton, and selected her berth upon

the western end of the pier; and the Belle Horton attempted to land upon the southwestern angle of said pier,—that being the proper berth, in the then condition of wind and tide. As the Belle Horton was making in to her berth, the Joseph M. Clark cast off and proceeded on the return trip to Old Point Comfort, and the two vessels came together; the starboard quarter of the steam tug raking the stem and bow of the Belle Horton, knocking off the stem and carrying away about four feet of the bow of the Belle Horton. The faults assigned against the Joseph M. Clark are: (1) Casting off in the existing conditions of wind and tide, when the Belle Horton was so near her pier; (2) not maintaining a proper lookout; (3) failing to keep out of the way of the Belle Horton; (4) attempting to cross her bow; (5) failing to stop and reverse its engines; and (6) increasing her speed. The faults charged against the Belle Horton are: (1) That she approached the pier at too high a rate of speed, at a time when it was known, or should have been known, that the tug was about to leave; (2) failing to have a proper lookout; (3) failing to keep out of the way the tug; (4) failing to obey the signal of two blasts from the tug, and the giving to the tug a cross-signal in reply thereto; (5) failing to slacken speed, stop, or reverse in time to prevent a collision; and (6) failing to starboard at the time of the collision.

The evidence was taken orally before the court, and a large number of witnesses examined, consisting, among others, of the officers and crews of the respective vessels; and, as to many of the material questions involved, the conflict is irreconcilable. It is not deemed necessary to enter into a lengthy discussion of the evidence, further than to say that it has been considered, and the conclusion reached is that the collision must be attributed to the fault of the steam tug Joseph M. Clark in negligently leaving her pier, without taking the precaution to observe the approaching steamer, and its negligent navigation after so leaving the pier. While the evidence of those navigating the two vessels is utterly irreconcilable as to just how the accident did happen, the account given by the libelant's witnesses is far more reasonable, in the essential particulars, than that of the respondent's; and, indeed, in the light of the undisputed evidence, and the indisputable physical facts surrounding the collision, it does not seem possible that it could have occurred as claimed by the respondent. It is quite apparent from the respondent's own evidence that no account was taken by those in charge of the Joseph M. Clark of the incoming steamer until after she had cast off and gotten under way, and not then until the lookout had taken time to coil the rope after casting off, that being also a part of his business. This of itself was gross negligence. It was known at the time, or should have been known, that the Belle Horton was then due at the pier, and that, under the then existing conditions of wind and tide, she would have to pass across the bow of the Joseph M. Clark in making her landing; and it is admitted that she was not more than four or five hundred feet from the pier at the time. The Joseph M. Clark's effort to leave the pier at all, under these circumstances, except by backing out, can only be attributed to the fact of its neg-

lect to observe the incoming steamer; and, for her failure in this respect, she, and not the incoming steamer, is responsible.

The faults assigned against the Joseph M. Clark in the matter of her navigation at the time of collision seem also to be established by the evidence. The two vessels were evidently approaching each other, from the moment the Joseph M. Clark cast off, in such manner as to involve risk of collision; and the Belle Horton was to the starboard side of the Joseph M. Clark, which imposed upon the Joseph M. Clark the duty of keeping out of the way of the Belle Horton, and required the latter vessel to keep her course and speed. Article 19, Act Cong. June 7, 1897 (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]). Under these circumstances, it was not only the duty of the Joseph M. Clark to keep out of the way of the Belle Horton, but, if the circumstances admitted, to avoid crossing ahead of her, and upon approaching the Belle Horton, if necessary, to slacken her speed, or stop or reverse. Articles 22, 23, Act supra. Notwithstanding these plain provisions of law, the Joseph M. Clark confessedly increased her speed, and attempted to cross ahead of the Belle Horton, and, as a consequence, the collision occurred. In the court's view, the danger of collision in the position in which the two vessels were after the Joseph M. Clark had cast off, and when those navigating her observed the Belle Horton, was imminent, and certainly such as to have called for the exercise of the greatest possible care and skill on the part of those navigating the Clark, and no further risk of collision should have been taken by the Joseph M. Clark. The presence of danger, or anticipated danger, was enough to admonish her of the necessity of complying with the rules of navigation. The Carroll, 8 Wall. 302, 19 L. Ed. 392; The New York, 175 U. S. 187, 270, 20 Sup. Ct. 67, 44 L. Ed. 126; Steamship Co. v. Low, 50 C. C. A. 473, 112 Fed. 161, 166, 172; The Richmond (D. C.) 114 Fed. 208.

The Belle Horton being the favored vessel on the occasion of the accident, should ordinarily have kept her course and speed; but if to do so would have involved absolute danger, or there was a failure on the part of her navigators to understand, from any cause, the course or intention of those navigating the Joseph M. Clark, it was her duty to immediately signify the same, by giving several short and rapid blasts, not less than four, and to have slowed down, as prescribed by rule 3 of article 18 of the inland rules, or article 28. This the Belle Horton did, and, indeed, she seems to have done everything in her power, under the circumstances in which she was placed, to avert the collision.

In what has been said, sight has not been lost of the fact that the collision in question occurred in the vicinity of a wharf where the steamers should have been managed with great caution, sounding their whistles as was necessary, to guard against collision or other accident. This, however, imposed an equal burden on each vessel; and, conceding that the Belle Horton should have given greater warning of her approach, still she had the right to suppose, on a dark night, with nothing to interrupt the view, and at a time when her arrival should have been anticipated, that those navigating the

Joseph M. Clark would have observed her approach, she being fully lighted up; and, besides, the Belle Horton had the right to assume that the Joseph M. Clark would not leave her pier and proceed across the bow of an incoming steamer.

The fault assigned against the Belle Horton, of coming in to the pier at too great a speed, is not established by the evidence; and certainly the speed at which she approached does not appear to have materially contributed to the accident, as the navigators of the Joseph M. Clark insist that there was ample room to have avoided the collision after the Belle Horton was observed by them and signaled to, had the navigators of the Belle Horton exercised proper care and caution on their part.

Under the view taken by the court, the collision was the result solely of the fault of the Joseph M. Clark, and a decree so finding may be entered.