## THE CARROLL.

1. Nautical rules require, that where a steamship and sailing vessel are approaching from opposite directions, or on intersecting lines, the steamship, from the moment the sailing vessel is seen, shall watch with the highest diligence her course and movements, so as to be able to adopt such timely measures of precaution as will necessarily prevent the two boats coming in contact.

2. Porting the helm a point, when the light of a sailing vessel is first observed, and then waiting until a collision is imminent, before doing anything further, does not satisfy the requirements of the law.

3. Fault on the part of the sailing vessel at the moment preceding collision does not absolve a steamer which has suffered herself and a sailing vessel to get in such dangerous proximity, as to cause inevitable alarm and confusion, and collision as a consequence. The steamer, as having committed a far greater fault in allowing such proximity to be brought about, is chargeable with all the damages resulting from the collision.

THIS was a case of collision between the schooner Loon and the steamer Carroll, which occurred on the waters of Chesapeake Bay. The collision happened about two o'clock at night; the night was bright, and the weight of the testimony was, that each vessel was provided with the necessary lookouts and lights. The schooner was in her proper course down the bay to James River, in Virginia, while the steamer was on her way from New York to the port of Baltimore, which the schooner had left the previous afternoon; and it was certain that the lookout of the steamer saw the schooner at least fifteen minutes before the accident happened. There was no dispute about the state of the wind nor of the respective speed of the boats; and that there was fault by one vessel or the other, was conceded by both parties. The officers of the steamer charged the fault to the schooner, because at the moment before the collision she changed her course, while those in command of the schooner asserted that this change of course was taken to avoid a greater danger, and only made when a collision was inevitable, and that if the officers of the steamer had been attentive to their duty the misfortune could have been averted. The only question was, therefore, which vessel was in fault? The

witnesses on the part of the schooner were her captain, one Edmonson, and two common seamen, Travis and Henry. The chief ones for the steamer, were Ashcom, her mate, and one Jordan, her lookout. The testimony of all these witnesses was given at length, and went chiefly to questions of the exact times when particular manœuvres were ordered or resorted to, and of the distances of the respective vessels at those times. Going thus to questions of fact merely, no sufficient advantage would be gained by setting it out; more particularly since the important parts of it on both sides are so largely recapitulated in the opinion of the court, as to make sufficiently intelligible the principles of law meant to be established by the judgment.

The evidence in the case was limited in extent, and not as contradictory as the evidence generally is where vessels collide. As usual, the effort of each boat was to relieve itself, and cast the blame on the other; but there was no good reason to think that any witness had intentionally sworn falsely.

The court below decided in favor of the schooner, and the owners of the steamer appealed.

The case was ably argued in this court, on the evidence and law, by *Mr. J. H. Latrobe, for the appellant, and by Messrs. Schley and Waters, contra:*

Mr. Justice DAVIS delivered the opinion of the court.

The only difficulty in cases of the kind brought by this appeal before the court, arises out of the almost necessarily conflicting character of the evidence; but if the court is able to reconcile it, or if this cannot be done, can see, notwithstanding this conflict, how the matter really occurred, then a conclusion is easily reached; for the rules of navigation which are applicable, have not only been settled by repeated adjudication, but are now embodied in the statute law of the United States.*

If the two vessels in this case were approaching each other in opposite directions, so as to involve risk of collision,

* 13 Stat. at Large, 60–61.

the duty of each was plainly marked out by law. The steamer was required to keep out of the way, slack her speed, or, if necessary, stop and reverse, while the schooner was required to maintain her course, and was not justified in changing it, unless obliged to do so to avoid a danger that immediately threatened her. As the steamer did not keep out of the way, and as the collision did occur, the steamer is *primâ facie* liable, and can only relieve herself by showing that the accident was inevitable, or was caused by the culpable negligence of the schooner.

It is manifest from those facts which are not disputed that, with proper precautions, these vessels should not have collided, and that there was blame somewhere.

Edmonson, captain of the schooner, says, that when opposite "Point-no-Point" he saw the steamer coming up the bay, about a quarter of a mile distant. The schooner was steering south by east, her proper course, and the steamer's bearing from the schooner was about a point westward from the schooner's course. The schooner held her course until about the time of the collision, when, as it seemed inevitable, directions were given to starboard the helm in order to ease the blow; in consequence of which change, the blow of the steamer was received forward of the fore-rigging instead of in the middle of the vessel, which would have been the case if the schooner had continued on her course.

Travis and Henry, seamen on board the schooner, corroborate this testimony.

It is true they manifestly err when speaking of time and distance, but they were inexperienced seamen, and not very intelligent men, and there is no good reason for discrediting their testimony, which, in other respects, is reliable, because they do not testify with accuracy about distance on the water, and err in computations of time. It may well be doubted, whether Edmonson was not mistaken in the distance he said he was from the steamer when he first saw her; but in view of the testimony furnished from the steamer, the point is not material.

Ashcom, the mate of the steamer, in command at the

time, and Jordan, the lookout, are the only witnesses on the part of the steamer who testify as to the state of the case prior to the collision, and they do not agree in their account of the transaction. Ashcom says, as soon as he made the schooner's light to be a port light, he gave the order to port the wheel, and it was done; while Jordan says he saw the schooner about fifteen minutes before the steamer struck her, and reported the fact to the mate, and that the course of the steamer was not changed until four or five minutes before the collision. At the speed the vessels were then running they could not have been more than a mile apart, and Ashcom admits, when he first saw the schooner, she was four or five miles off.

It is highly probable that Jordan is right as to the point of time when the change was made, but be this as it may, the steamer cannot escape condemnation, unless she is able to show that there was no risk of collision, or that she adopted suitable measures to avoid it, and that the disaster was the result of misconduct on the part of the schooner. The fact that the vessels did collide, explodes the theory that there was no risk of collision, and besides, why did the mate port his helm if in his judgment there was no risk of it? He says this was done as soon as he saw the schooner. If so, he believed at the time the relations of the vessels to each other were such that they might collide, and the possibility of it is all that is required to charge the steamer, unless she can establish that she was without fault. There is no evidence to show that the schooner changed her course until the peril was imminent, but the natural inquiry arises, which boat was blamable for producing this peril? The schooner was not, because she was obliged to keep her course. She could not choose, because the law had chosen for her. It is otherwise with the steamer. She could go to the right or left, and change as often as there was, in the apprehension of her officers, a necessity for change.

The steamer is, therefore, to blame for suffering this peril to occur; for if it be conceded that the schooner was wrong in starboarding her helm, this cannot affect her right to

recover, as she was in other respects without fault, because the steamer, having the right of way, put her in this predicament, and must answer for the consequences.*

It is obvious that the officers of the Carroll were either unaware of the nature and extent of the nautical rules which govern vessels approaching each other in opposite directions, or were unmindful of them. These rules were established in the interest of commerce—for the protection of life and property, and must be observed. They require, where a steamship and sailing vessel are approaching from opposite directions, or on intersecting lines, that the steamship, from the moment the sailing vessel is seen, shall watch with the highest diligence her course and movements, so as to be able to adopt such timely measures of precaution as will necessarily prevent the two boats coming in contact. This the Carroll, on this occasion, failed to do. Porting the helm a point, when the light of the schooner was first observed, and then waiting until the collision was imminent before doing anything further, does not satisfy the requirements of the law. The safeguards against danger, in order to be effectual, must be seasonably employed, and in this case they were not used until the danger was threatening. If there was fault on the part of the schooner, the steamer committed a far greater fault in suffering the vessels to get in such dangerous proximity at the moment preceding the collision, and as she has furnished no excuse for this misconduct, is chargeable with all the damages resulting from this collision.

DECREE AFFIRMED, WITH INTEREST.

MILLER, J., having been absent on the argument, took no part in the judgment.

---

* New York and Liverpool U. S. M. S Co. v. Rumball, 21 Howard, 383.