Drake, Ch. J.,
delivered the opinion of the court:
The case is so similar to that of The Carroll (8 Wall., 302) that we cannot do better than apply to it the principle and rules there laid down, as follows:
“Where a steamship and sailing-vessel are approaching from opposite directions or on intersecting lines, the steamship, from the moment the sailing-vessel is seen, shall watch with the highest diligence her course and movements, so as to be able to adopt such timely measures of precaution as will necessarily prevent the two boats coming into contact.
“Porting the helm a point-when the light on the schooner was first observed, and then waiting until a collision was imminent before doing anything further, does not satisfy the requirements of the law. The safeguards against danger, in order to be effective, must be seasonably employed.
“If there was fault on the part of the schooner, the steamer committed a far greater fault in suffering the vessels to get in such dangerous proximity, and, as she has furnished no excuse for this misconduct, is chargeable with all the damages resulting from this collision.”
Controlled by these views, this case seems to us to turn upon a few leading facts:
1. The Flight was entitled to change her course to south at the place where she did change it.
2. The officers of the Tallapoosa well knew that vessels descending the Potomac and bound for Norfolk change their course there to south to go down the bay.
3. The officers of the Tallapoosa saw the Flight for thirty minutes before the collision.
4. The Flight did not see the Tallapoosa till three minutes before the collision.
5. For miles to the eastward of the Tallapoosa, from the time she sighted the Flight, there was clear water.
Under these circumstances it was the plain duty of the Talla-poosa to keep out of the way of the Flight, as it was perfectly in her power to. have done, by porting her helm and passing entirely east of the place where the Flight, as the Tallapoosa’s officers well knew, would in all probability turn south. To neglect this manifest precaution, which would probably have cost *441 only a few minutes of time, was a grave fault on tbe part of the Tallapoosa.
This fault was the more serious because of the partially disabled condition of the Tallapoosa. She was making only three miles and a half an hour, instead of her ordinary speed of ten miles an hour. It would seem to be quite clear that this should have increased the vigilance and efforts of her officers to avoid an emergency; for it was fairly presumable that she could not, in that condition, be as quickly, readily, and skillfully handled as she could have been if she were in all respects in her usual good condition.
It is contended that the Flight, as well as the Tallapoosa, was in fault in not having a stationed lookout, and, therefore, that the loss should be apjiortioned between the two vessels. To this the closing words of the above extract from the opinion of the Supreme Court are a complete answer. The fault of the Tallapoosa was so much greater than the Flight’s, that there is no case for apportionment of the loss; the whole must fall on the Tallapoosa.
The judgment of the court is that the claimants recover $3,975, of which the sum of $3,500 is for the value of the schooner : $450 for the value of the cargo, to be paid to Horace Jar-boe; and $2p for the value of the clothing of William B. Stone, jr., to be paid to him.