PERKINS and others *v.* SCHOONER HERCULES.

WARREN FOUNDRY & MACHINE COMPANY *v.* SAME.

*(District Court, D. Massachusetts.* April 14, 1880.)

COLLISION — SAILING VESSEL AND STEAMER — IMMATERIAL OMISSIONS — BURDEN OF PROOF.—In the case of a collision between a sailing vessel and a steamer, the burden of proof is on the latter to show want of negligence, and the omission of the master of the schooner to warn the man at the wheel of the approach of the steamer, or to show a lighted torch, in accordance with section 4234 of the Revised Statutes, is immaterial, when such omissions did not contribute to the collision.

In Admiralty.

NELSON, J. These are two libels; the first by the master, crew and owners of the schooner Charles S. Rogers, and the second by the owners of the cargo on board the schooner, against the steamer Hercules, for running into and sinking the schooner, off Cape Cod, three miles south-east of Highland Light, at half past two of the morning of May 31, 1879. The night was clear, with the wind fresh from south south-

east.    The schooner was standing north north-west, on her port tack, bound for Boston, at a speed of nine knots.    The steamer was steaming in a south-easterly direction, at a speed of eight knots, on a course substantially parallel with the course of the schooner.    The steamer struck the schooner on her starboard side, near the fore-rigging, causing her to sink immediately.

The answer sets up three grounds of defence—*First*, that no proper lookout was kept on board the schooner; *second*, that the schooner did not keep her course; and, *third*, that the schooner did not show a torch.    Upon the first point, I think it was satisfactorily proved that the mate of the schooner was on the lookout from 2 o'clock until the time of the collision.    This is sworn to by the mate himself, and by the man at the wheel, the only persons who were on deck at the time, and I see no reason to doubt the correctness of their testimony.

Upon the second point I am of the opinion, the preponderance of the evidence is in favor of the position of the libellants, that the schooner kept her course, and the accident resulted from the negligence of those in charge of the steamer.    The mate testifies that he first saw the steamer's mast head-light when about three miles distant, one point on his starboard bow, and when the steamer had approached to within one mile he then first saw her green light; that the green light continued in sight up to the very moment of the collision, and at no time did he see her red light.    Both the mate and the man at the wheel swear that the schooner kept her course until she was struck by the steamer.    If this is correct, then the course of the steamer was east of that of the schooner.

The evidence on the part of the steamer is that the schooner was first seen at a distance of one mile; that the color of her light was red, and bore one and a half points on the steamer's port bow; that the steamer at once ported her helm, and changed her course to due south, and as she approached the schooner nearer her helm was put hard to port, and the signal given to stop the engine; that the schooner's green light

first became visible just as the steamer struck her, and the schooner was then headed N. W. by W., and the steamer S. by W. $\frac{3}{8}$ W. If this account is to be taken as correct, the course of the steamer was west of that of the schooner, and the schooner must have changed her course several points to the westward during the interval of less than four minutes after she first saw the steamer's side-light until the collision. Two accounts of the same transaction could not well be wider apart than these. But there are one or two circumstances which tend to show that the steamer was east of the schooner. If this is so, it is very clear she did not see the schooner's red light, and should not have ported her helm and attempted to pass to the west of the schooner, but should either have held her course, when she would probably have gone clear, or should have put her helm to starboard and passed to the eastward.

*First.* The mate of the schooner who had charge of the deck, and was on the lookout, did not report the steamer to Dewey, the man at the wheel, and Dewey did not see the steamer or know of her approach, until the collision took place. If she had come up on the port side of the schooner she would have been in plain sight of Dewey. The fact that he did not see her is strong proof that her approach was on the schooner's starboard bow, as his view in that direction was shut off by the schooner's sails. *Second.* If the course of the schooner had been changed, as the claimants contend it was, her green light must have been seen from the steamer for some little time before the collision. *Third.* No one of the witnesses on the steamer testifies to having seen any change of course by the schooner. Her sails were seen for some little distance, and if her course had been changed to the extent claimed some indications of it must have been visible from the steamer. No witness saw the disappearance of the red light, and the appearance of the green light. Such a change must have been noticeable, and would have been a prominent circumstance in the case if it had occurred. *Fourth.* Such a change of course by the schooner is altogether impossible. It could only have occurred through the

gross ignorance or wilful negligence of those in charge of her, and there is no evidence of either.

It further appeared that the master did not report the approach of the steamer to the man at the wheel. But as it appeared his failure to do so did not result in any change in the schooner's course, or in any way contribute to the accident, the circumstance is of no importance.

As to the last point of defence, it appears that the schooner did not show a lighted torch, as sailing vessels are required to do on the approach of a steam vessel during the night time. Rev. St. § 4234. But it is also clear that this did not contribute to the accident. The schooner's light was seen from the steamer a mile off, as far, certainly, as a lighted torch on deck could have been seen, and in season to avoid the collision if proper precautions had been taken by those on board the steamer. Under the circumstances it is settled that the failure to show a torch by the sailing vessel does not excuse the steamer. *The Leopard,* 2 Low. 239.

It is well settled, in cases like this, that the burden of proof is on the steamer to show a a sufficient reason for not keeping out of the way of the sailing vessel. *The Carroll,* 8 Wall. 302; *The Java,* 14 Blatch. 524.

Upon all the evidence I am of the opinion that the claimants have not sustained this burden, and that the collision in this case arose from the negligence of those in command of the steamer, in not making sufficient allowance for the high rate of speed, a mile in three minutes and thirty-two seconds, with which the two vessels were approaching each other.

The entry in each case will be, interlocutory decree for libellants.