Choate, D. J.
These are cross libels to recover damages caused by a collision between the steam-boat Sylvan Glen and the sloop Maguire Brothers, on the evening of November 1, 1878, in the East river, about off pier 41. The steam-boat was on her regular trip to Astoria, having left Peck slip at 10 minutes past 6 o’clock. The sloop was light, bound from Newtown creek to Haverstraw. She was beating down the river, the wind being about west, or nearly ahead — a fresh breeze.* She left the creek about 5 o’clock, and had made •several tacks across-the river before the collision. The collision happened while she was on her starboard tack, standing across from the New York shore to the Brooklyn shore. The tide was strong ebb.
The case made for the sloop in her pleadings is that both her side lights were set and burning brightly; that she ran out her port tack close to the New York shore, and stood .about on the starboard tack, and after having gathered headway and while upon this tack, and when about three lengths *906 away from the New York shore, the red and green lights of the steam-boat were observed, the steam-boat then running at a greater rate of speed than 10 miles an hour, and not near the center of the river; that the steam-boat was then heading for the sloop in such a manner as to render it probable that she was going under her stern, when she suddenly and without notice made a rank sheer to starboard across the bowk of the sloop; that the sloop held her course, and that by thus running across the bows of the sloop the steam-boat hit-the bowsprit and bow of the sloop with the port paddle-box, or guard of the steam-boat, the wheel being still in motion, whereby the bowsprit of the sloop was taken out of her, her wood ends were bursted open, her mast sprung, her bows crushed in, and other damage done. It is further charged that the collision was occasioned solely by the fault and negligence of the persons managing said steam-boat in that, among other things, she was not running near the center of the river, but near the New York shore; that she was running at a higher rate of speed than is allowed by the statutes-of the state of New York; that she did not discover said sloop-in time to avoid her, and did not see her red light; that she-attempted to pass across the bows of the sloop instead of under her stern, and that she did not stop in time to avoid-the collision.
The pleadings on the part of the steam-boat allege that she-proceeded up the river about one-third of the distance across-from the New York shore; that when she arrived at about opposite pier 45, East river, the green light of the sloop was-suddenly seen, a short distance on the port side of the" steamboat, the sloop being on the starboard tack and heading for about the forward port gangway of the steam-boat; that the-sloop had no red light on the port- side; that the sloop was-seen by those on board of, and in charge of, the steam-boat as soon as she exhibited her green light, but said vessels were-then so near each other that all that could be done by those-on board the steam-boat was to port her wheel and sheer towards the Brooklyn shore, which was immediately done, and a long, loud blast of her whistle was sounded; that from that/ *907 time till the collision which ensued the said sloop held her course without changing, although it was entirely manifest that a slight change of her wheel would carry her under the stern of the steam-hoat, and she ran into the steam-boat, striking her in her port wheel and doing serious damage. It-is also alleged that the speed of the steam-boat in no way contributed to the collision, and that no collision would have-occurred if the sloop had had .her red light set and burning, and that the collision was caused wholly by the negligence of those in charge of the sloop in having no proper lookout, in not having her red light set and burning, and in not going under the stern of the steam-boat, (as a slight change of her course would have carried her,) and in not avoiding the steamboat, as she easily could have done. It is also alleged on behalf of the steam-boat that she could not stop and back when the green light was seen without the risk of serious damage- and loss of life, she being at that time crowded with passengers, and the only thing she could do was to port her wheel and sheer to starboard, which she did as soon as the sloop-showed Per green light.
It was not contested upon the trial that the sloop beat out her port tack and came about as close to the New York shore as she was bound to do, and the only faults insisted upon as-against her were that she had no red light, and that she did not luff up under the stern of the steam-boat to prevent the-collision after it became imminent. If the sloop had her red light set and burning as she ran towards the New York shore on her port tack, it is obviously no excuse for the steam-boat coming into collision with her while on her starboard tack; that there was no way of avoiding the collision after the-steam-boat saw the green light, for in that-case the failure of the steam-boat to observe the red light and to govern herself accordingly was negligence, and the cause of her getting into such close proximity to the sloop that she could not avoid h®r.
The first question, therefore, is whether the red light of the-sloop was set and burning while she was on her port tack-On this question the preponderance of the evidence very clearly- *908 is with the sloop. It was proved that the side lights were set about the time the sloop left the mouth of Newtown creek, and the red light, or its reflection on the shrouds, was observed by several of the crew at several different times during the port tack in question, and afterwards by one of them before the ■collision. It was seen by a witness from another vessel which passed up the river just before the collision, and which passed the sloop while she was on that port tack. It is also positively sworn to by two witnesses who were standing on the pier near which the sloop went about. Against this evidence there are from the steam-boat three witnesses — the pilot and assistant pilot, who were in the wheel-house and the mate, who was on the lookout forward — who testify that they ■saw no red light; and the pilot of a ferry-boat which was going up the river between the steam-boat and the clew York shore, •and which slowed for the sloop as she went out on her last .starboard tack, who testifies that she had no red light.
As to the three witnesses from the steam-boat it is evident that, though they swear positively that the sloop had no red light, they do so wholly on their inference to that effect from the fact that they saw no red light up the river about where she must have been, and'that they kept, as they believed, a careful lookout for lights and would have seen it if it had been there. But considering the speed of the steam-boat, which her pilot admits to have been about 11- miles an hour, and which the .evidence tends to show was considerably more than that, it is obvious that her distance from the sloop while the latter was drawing near to New York on the port tack was such that the failure to see the red light then can be ■easily accounted for by inattention or byintervening objects. It took some little time for the sloop to go about and gain headway on her new tack. Meanwhile, the steam-boat was going at the rate of half a mile in two minutes and a half.
As to. the pilot of the ferry-boat, called as a witness to this point, his testimony is entitled to much greater weight, because he evidently believed that he saw the sloop while she was still beating out her port tack, and that she had no red light. He says he saw a shadow of something go in towards *909 the pier, and then he saw the green, light as the sloop came about. It is not always possible to account for the errors of observation or memory so often disclosed in this class of cases, but the testimony of this witness, .though apparently entirely honest, is overborne by the great weight of testimony showing that the sloop had her red light burning. The-statements of this witness as to other matters, especially ihe rel* live position of the ferry-boat and the steam-boat, are very difficult to reconcile with the other proofs, and his testimony on this point of the light must be held to be a mistake.
It is observable in this connection that, though it is admitted in the pleadings that the steam-boat was crowded with passengers, and although it was testified by her lookout that-there were many passengers on the forward deck who were known to him as regular passengers, none of them were called. Nor was the engineer called in respect to the speed of the steam-boat, although the witnesses from the sloop testified to their opinions that she was going 15 miles an hour, which the proof as to her time for running to Astoria rather tends to confirm.
It must be held, therefore, upon the proofs that the sloop-had proper lights; that the steam-boat was in fault in not seeing them, and in not keeping out of her way. The other faults charged against the steam-boat, that she was going at-a rate of speed exceeding the limit fixed by the state statute— 10 miles an hour — and that she was running up the river at this excessive rate of speed, not near the center of the river, but near the New York shore, are also established by the evidence. It is not at all probable that if she had been one-third of the way across the river when she saw the green light on her port hand, slowly moving out on the starboard tack and then close into shore, she would have found the difficulty stated in the pleadings and described by her witnesses, in going under the stern of the sloop, between her and the New York shore, or in slowing and stopping so as to avoid the collision.
The other charge of fault against the sloop has no founda *910 tion. . She was bound by the rule to keep her course. There was nothing in the situation to require or to justify any departure from that rule on her part. She was just getting headway, being close hauled on the starboard tack, and the •steam-boat going at full speed on her starboard hand was coming up to her and sheering more and more towards the Brooklyn side, so that, as one of the steam-boat’s own witnesses says, ■she sheered off four points from her original course up the river. The steam-boat was acting in open disregard of the state statute and the rules of navigation in thus trying to cross the bows of the sloop at full speed when it was at best very doubtful whether she could clear her. If it were a case in which the sailing vessel would be justified in departing from her course, the evidence does not show that she was at fault in not doing so.
The burden is on the steam-boat to prove very clearly that the luffing of the sloop would have saved the collision, especially as she herself had made it imminent. And certainly no duty devolved on the sloop to make any movement other than to keep her course until after it became evident to those in charge of her that the steam-boat could herself do nothing to avoid the collision, for till that was evident the sloop must act on the supposition that the steam-boat would perform her duty and keep out of the way, and any movement of the sloop ■other than keeping her course would only cause embarrassment to the steam-boat in the performance of this duty. The blowing of a whistle by the steam-boat to the sloop, if she did so before the collision, which is disputed, was an unmeaning signal. She had no right to call on the sloop to give way or change her course. Nor upon the evidence is it shown that if the sloop had luffed at the last moment it would have averted the collision. They came together at an angle of about 45 degrees, the steam-boat crossing the sloop’s bow •diagonally forward at that angle. If the sloop had luffed immedately before the collision, it is not shown that they would have cleared each other. It is quite probable, on the evidence, that they would not. The collision was caused wholly by the reckless navigation of the steam-boat.
*911 Decree for libellant in suit against the Sylvan Glen, with costs, and a reference to compute the damages.
Libei against the Maguire Brother» dismissed, with costs.