## THE SENECA.

### MALONEY *v.* THE SENECA.

*(District Court, D. Rhode Island. July 25, 1891.)*

COLLISION—BETWEEN STEAM AND SAIL—BURDEN OF PROOF.
  A steam-yacht having run down and sunk a schooner, the sole question as to the liability was whether the schooner changed her course before the collision. Five witnesses, one of whom was disinterested, testified that the schooner did not change her course until the collision had become inevitable, and they were directly contradicted by only one witness. *Held*, that the yacht was liable, since the burden was on her to prove that the schooner changed her course.

In Admiralty.

This was a libel for a collision, whereby the schooner General Hall was sunk about five miles easterly from Nausett light, off Cape Cod, at about 11 o'clock on the evening of April 4, 1891. It appeared from the testimony, without substantial contradiction, that the wind was N. W. by N., and moderate; the sky was overcast, but the air was clear; that the schooner was close-hauled on the port tack, and headed about N. by E.; that to the leeward of the General Hall was the schooner Hattie S. Collins, on the same tack, and with the same course, and a little ahead of the Hall, and distant from her about 200 yards; that the

steam-yacht Seneca was heading about S. by W., nearly head-on to the schooner, but on a course a little to the westward of the course of the schooner, and was proceeding at about the rate of 10 miles an hour, and was about three-eighths of a mile northward from the Hall; that from these positions the vessels so proceeded that the steamer struck the schooner on the starboard side about amidships, cutting her down, and bringing down her mainmast; and that the schooner sank almost immediately afterwards. The master, mate, steward, and man. at the wheel of the schooner testified that she did not tack or change her course, except that just before the collision, and when it could no longer be prevented, the wheel was put to starboard, in the hope to lessen the force of the blow, and the schooner luffed about one point. This testimony was corroborated by the testimony of the master of the schooner Hattie S. Collins. Alonzo P. Bliven, a designer and builder of yachts, who had bought the yacht in Boston for her present owner, testified that he was on deck acting as lookout at the time of the collision, and that the schooner came in stays, and went about when the vessels were about 300 yards apart, bringing the schooner across the bow of the yacht, and making the collision inevitable. Mr. Bliven also testified that the master of the schooner, after he was taken on board the yacht, said that he had made a mistake in going about. Kemp, the valet of Mr. Langley, the owner of the yacht, testified that the master of the schooner admitted the collision was his fault; and Dean, the cook of the yacht, gave similar testimony. There was no evidence that any effort had been made to obtain the presence or the testimony of any other of the persons who were on the yacht at the time of the collision. The master of the schooner denied that he had said he was in fault.

*E. E. Blodgett* and *E. P. Carver*, for libelant.

*Samuel T. Douglas* and *William W. Douglas*, for claimant.

CARPENTER, J., (*after stating the facts as above.*) Various subsidiary questions have arisen on the evidence in this case, and have been carefully argued; but I think they have no weight, except to support one side or the other of the single issue which must be decisive of the question of liability. The sole defense of the owner of the yacht is that the schooner changed her course, and thereby caused the collision. On this issue, whether she did so change her course, he has the affirmative and the burden of proof. I think he falls far short of sustaining this burden. All the crew of the schooner who have any knowledge of the facts give their testimony to the effect that the course was not changed; and they are corroborated by the testimony of the master of the Collins, who does not appear to be interested in this controversy. On the other hand, there is substantially but one witness; for I am not inclined to give much weight to the loose and indefinite reports of conversations which are given in by the cook and the man-servant.

It is true that the master of the schooner admits that at first he mistook the yacht, with her long row of electric cabin-lights, for a tug with two barges in tow; and it is ingeniously argued that, since barges under

the influence of the strong breeze would be considerably to the leeward of the course of a tug, it is reasonable to suppose that the master of the schooner, knowing this fact, and relying on the slow rate of speed at which the supposed tug must be proceeding, would naturally think it safer to come about and pass the tow to the windward. Doubtless this consideration might have some weight if the testimony as to what actually occurred on board the schooner were much more evenly balanced. But, on the other hand, it is to be considered that, if the master supposed the yacht to be a tug with barges, he would still be conscious that it was his duty to hold his course, and the duty of the master of the tug to so manage his vessel and his tow that no collision should happen. On the whole, therefore, I am of opinion that the fault rests wholly with the yacht, and that there must be a decree accordingly.