### THE MARY A. BIRD.

(District Court, D. New Jersey. May 14, 1900.)

1. COLLISION—STEAM AND SAILING VESSELS—DUTY OF TUG WITH TOW.

   The fact that a steam vessel is incumbered with a tow does not relieve her from the duty imposed by the navigation rules of keeping out of the way of a sailing vessel, but rather requires additional care upon her part; and so strict is this rule that she can only escape liability for a collision by showing that it was inevitable, or caused by the culpable negligence of the sailing vessel.

2. SAME—FAULT—VESSELS CROSSING.

   A tug with a tow sighted a schooner approaching on a crossing course, when the vessel were 200 yards apart, but took no steps to avoid collision, except to give danger signals to the schooner, which kept her course, and came in collision with the tug. *Held*, that the tug was in fault for the collision, it not being shown that she could not have kept out of the way if she had made proper effort to do so.

In Admiralty. Libel for collision.

McGee, Bedle & Bedle, for libelant.

James J. Macklin, for claimant.

KIRKPATRICK, District Judge. The libel in this case is filed to recover damages for injuries sustained by the libelant's steam tug Emma Kate Ross, which, in the morning of October 8, 1896, came in collision with the schooner Mary A. Bird. The steam tug had in tow two empty scows; the one attached to the tug by a hawser about 75 fathoms in length, and the other further astern by about 5 fathoms. They were proceeding from the dumping grounds to New York. The schooner Mary A. Bird was light, and was bound from New York to Rockaway. The night was clear starlight, and the sea was calm. The tide was ebb, or on the first of the flood, and the wind fresh from the west-northwest. The collision occurred between the iron pier of Coney Island and Norton's Point. The tug was struck forward of the pilot house, about abreast of the kitchen. It appears from the testimony of the mate of the schooner, who had her in charge, that he sighted the tow when about one mile distant, and that from that time until the vessels collided he held his course. The lookout on the tug testifies that he saw the schooner when about 200 yards away, and that when he went to report her to the pilot of the tug he became aware that the pilot had seen the schooner, because he blew two sharp whistles, intended, as he supposed, to be a warning of danger to the schooner. The pilot says he first saw the schooner when about 70 feet away, and that he then blew two sharp whistles, to notify her of her danger, and to require her to take precautions to avoid it. The pilot of the tug says that the schooner, on

hearing the warning whistles, momentarily luffed, and then almost immediately changed to her original course. He, in the meantime, did nothing except again blow his danger whistle. He did not change his course, nor stop his engines and back, nor even slow his speed, any of which would have tended to avert the disaster. The engineer of the tug says that he got no signal to change the speed of the boat until after the blowing of the second danger signal, and that at no time was the boat stopped. It seems to me that the pilot of the tug entirely misapprehended and failed to perform his duty. The excuses he gives for his conduct are entirely unsatisfactory. He says first that he considered it the duty of the schooner to keep out of the way of the tug. It needs no citation of authority to show that in this he was clearly mistaken. Article 15 of the regulations for preventing collisions at sea is too clear to be misunderstood. The duty of steamers to keep out of the way of sailing vessels, imposed by this rule, is not modified because they are incumbered with tows. New York & B. Transp. Co. v. Philadelphia Steam Nav. Co., 22 How. 461, 16 L. Ed. 397. The fact that they are so incumbered imposes upon them the burden of additional care. To facilitate the steamship in the discharge of her duty, the sailing vessel must not embarrass her by changing her course; she must keep on, that the steamer may know how to properly exercise the necessary precautions to avoid collision. So strict is this rule of duty that a steamer can only escape responsibility for collision with a sailing vessel by showing that it was inevitable, or caused by the culpable negligence of the sailing vessel. The Carroll, 8 Wall. 304, 19 L. Ed. 392. The burden of proof in such cases is on the steamship to show the prudence of its own conduct and the negligence of the other. The New Orleans, 18 Fed. Cas. 105. The pilot further urges that he could not turn from his course, because he feared he would go aground with the tug on account of the narrowness of the channel. The testimony on this point does not sustain this contention. The pilot himself says that at the point where the collision occurred the channel was not 50 feet wide. The captain of the Ross, however, says it was 150 feet wide, while the testimony of the claimants fixes it at 200 fathoms. The Ross was 30 feet wide. We may properly infer that the width of the channel was at least as great as that fixed by the captain of the Ross, in which case there was plenty of room for the Ross, without danger of going aground, to have changed her course sufficiently to have avoided the schooner. Even were it not so, the duty of the tug was to have stopped and backed, so as to give the schooner a free course. The only excuse offered for not so doing is that the wheel might thereby have become entangled in the towline. This is entirely unsatisfactory. There was plenty of time, after the schooner was sighted, to have sent a man to the stern, and hauled in the line. There is no proof of fault on the part of the schooner. I am satisfied from the evidence that by the exercise of proper precautions on the part of the tug the collision could have been avoided. The libel should be dismissed, with costs.