## THE ELIZABETH.

### (District Court, E. D. Virginia. April 19, 1902.)

1. ADMIRALTY—COLLISION—VIOLATION OF RULES OF NAVIGATION—LIABILITY.

   Act Cong. Aug. 19, 1890 (26 Stat. 320-327) art. 20, requires that, where a steamboat and sailing vessel are in danger of collision, the steamboat shall keep out of the way. Article 21 prescribes that, where one of two vessels is required to keep out of the other's way, the other shall hold its course and speed. Article 22 provides that the vessel required to keep out of the way shall, if possible, avoid crossing ahead of the other. Article 23 declares that the vessel required to keep out of the way shall, if necessary, slacken speed, stop, or reverse. A steam ferryboat came practically to a standstill in Norfolk harbor to permit a steamship to pass, and then rang up, and passed full speed under its stern. At that moment a sloop was observed passing down the harbor immediately across the steamer's bow, and the ferryboat, instead of complying with the rules, whistled for the right of way, without slackening speed or reversing; and a collision resulted, in which libelant's intestate, a passenger on the sloop, was killed. *Held*, that the ferryboat was at fault and liable.[1]

---

[1] Collision rules, see notes to The Niagara, 28 C. C. A. 532; The Mt. Hope, 29 C. C. A. 368.

**2. SAME—RIGHT TO VIOLATE RULES.**

The ferryboat had no right to call on the sloop to give way or change its course, there being nothing to indicate peril or difficulty to the former in conforming to the accustomed rules of navigation.

**3. SAME.**

Even if there had been apprehension of immediate danger, as contemplated by Act Cong. Aug. 19, 1890 (26 Stat. 327), art. 27, requiring due regard to be had to special circumstances rendering a departure from the rules necessary to avoid danger, the ferryboat should have resorted to all other practical methods of avoiding the collision before violating the statutory requirements.

**4. SAME—CONTRIBUTORY NEGLIGENCE—ERROR IN EXTREMIS.**

Even if the sloop, on the signal from the ferryboat, luffed and changed its course for half a minute, and then suddenly again changed its course across the ferryboat's bow, the ferryboat would still be liable; the sloop's negligence being error in extremis.

**5. SAME—NECESSARY DAMAGES.**

Libelant's intestate was a colored farm laborer, without any special acquirements; having no trade of any kind. He at times worked in a dairy, making $25 per month, or more. He was 23 years old, of good health, sober and industrious, provided for his family, and left a widow, without children. *Held*, that $1,200 damages should be awarded.

In Admiralty.

A. B. Carney, Jr., and R. W. Peatross, for libelant.

T. J. Wool and Floyd Hughes, for respondent.

WADDILL, District Judge. This libel was filed by the personal representative of George Chatman, deceased, to recover damages occasioned by the death of the said Chatman in a collision between the steam ferryboat Elizabeth and the sloop Martha Jane, upon which sloop the deceased was a passenger. The collision occurred on the 29th of June, 1901, in the harbor of Norfolk. The ferryboat was en route from its slip in the town of Berkley to the city of Norfolk, and the sloop was proceeding down the Elizabeth river. As is usual in this class of cases, the vessels in collision respectively contend that the occurrence was solely the fault of the other. It is not deemed necessary to enter into a lengthy discussion of the evidence, further than to say that it has been fully considered, and the conclusion reached is that the collision must be attributed to the fault of the ferryboat Elizabeth, in not complying with the rules of navigation, by keeping out of the sloop's way, or slackening its speed, or stopping or reversing, or otherwise taking necessary precautions to avert the collision, when it was apparent that it was in such close proximity to the sloop as to make the danger of collision imminent. Articles 20–23 of Act Cong. Aug. 19, 1890 (26 Stat. 320–327), prescribe the rules for the avoidance of collisions between steam and sailing vessels, and the obligation imposed by these rules is imperative; and those violating them, except under circumstances contemplated by other provisions of said act, must bear the consequence, if damage ensues. From respondent's evidence in this case, it is apparent that on the occasion of this collision the Elizabeth failed to comply with either rule 20, 22, or 23; and in fact the violation of all three of the rules is, in effect, conceded. The evidence establishes that the ferryboat came practically to a standstill

in order for an Old Dominion steamship to go by, and, as it did, it rang up, and proceeded to pass full speed ahead under the stern of the steamship; and at that moment the sloop Mary Jane was observed passing down the harbor, and about 75 yards away, having on board some 25 persons, men and women, including libelant's intestate, who were returning from the city of Norfolk to their homes, in the country near by. The sloop was proceeding immediately across the ferryboat's bow; and the latter, instead of complying with the plain rules of navigation, "tooted or popped" its whistle two or three times, without slackening its speed or reversing, which, according to one of the libelant's chief witnesses, the expert Etheridge, who was a passenger on the ferryboat, and an eyewitness, meant to ask for the ferryboat the right of way. In other words, having itself violated the rules of navigation prescribed for its own conduct, it called upon the sloop to do likewise, and violate the rule governing its movements, by keeping its course and speed. Vessels in such close proximity as these were on this occasion, each at the time freighted with passengers, should not have engaged in any such hazardous experiments. It was the duty of the ferryboat, upon her proceeding in such a direction as to involve risk of collision, to keep out of the way of the Mary Jane, and likewise to avoid a collision with her, by crossing ahead of her, and upon approaching her, if necessary, to slacken her speed, or stop or reverse. None of these things the ferryboat did, but elected to follow rules of her own, which resulted in the collision. The ferryboat should have avoided the risk of collision, and for her failure so to do she is clearly liable. The presence of danger, or anticipated danger, was enough to admonish it of the necessity of complying with the rules of navigation. The Carroll, 8 Wall. 302–305, 19 L. Ed. 392; The New York, 175 U. S. 187, 207, 20 Sup. Ct. 67, 44 L. Ed. 126; Steamship Co. v. Low (C. C. A.) 112 Fed. 161, 166, 172; The Richmond (D. C.) 114 Fed. 208. The Elizabeth had no right to call upon the sloop to give way or change her course, under the circumstances of this case, as there was nothing which indicated any peril or difficulty to the Elizabeth in conforming to the accustomed rules of navigation. Maguire v. The Sylvan Glen (D. C.) 2 Fed. 905; Squires v. Parker, 42 C. C. A. 51, 101 Fed. 843, 845. There is no suggestion of inevitable accident in this case, and had there been apprehension of immediate danger, as contemplated by article 27 of the above rules, the ferryboat should have resorted to all other practical methods of avoiding the collision, before it attempted to violate the statutory requirements. The Marguerite (D. C.) 87 Fed. 953; Squires v. Parker, supra.

The position of the Elizabeth, that, upon its "tooting or popping," the sloop luffed, and changed its course for about half a minute, and then suddenly again changed its course across the bow of the Elizabeth, which is claimed by the ferryboat to have been the real cause of the collision, will not suffice to relieve it from responsibility in this case; it having neither slackened its speed, nor stopped or reversed, until this alleged change of course of the sloop. The steamer should not have waited in the position in which it was, either to slacken its speed, or stop or reverse; and if it be admitted that the

sloop did luff, as claimed by the respondent, which is exceedingly doubtful, from the evidence, its negligence in this regard should be treated as error in extremis, brought about by the ferryboat's misconduct.

Some evidence was introduced tending to show that the navigator of the sloop was under the influence of liquor at the time of the collision; but this charge is not borne out by the evidence, and, indeed, there is but little to justify the charge, so far as he is concerned.

Upon the question of the amount of damages that should be allowed libelant, it appears that the deceased was a colored farm laborer, at the time of his death, without any special acquirements, having no trade of any kind, and at intervals he worked in connection with a dairy; making, when so engaged, $25 per month, and at other times something more. He was 23 years of age, of good health, sober and industrious, and provided for his family, and left a widow, without children. Upon these facts, and taking into consideration all of the circumstances of the case, the court thinks an award of $1,200 should be made libelant, in full of all damages arising from the death of her intestate; and a decree may be accordingly so entered.