## THE ASHFORD.

### O'BRIEN v. THE ASHFORD et al.

*(District Court, S. D. New York. December 27, 1890.)*

COLLISION—BETWEEN CANAL-BOATS—BURDEN OF PROOF.
Where two canal-boats collide while each is being towed by a tug upon a hawser nearly 400 feet long, and it appears that neither tug is going at an improper rate of speed, and that each canal-boat has sufficient steering gear to enable her to keep on her side of the canal, the owner who libels the other boat for damages cannot recover where the evidence does not show, by a fair preponderance of the proof, that the libelant's boat was at the time of the collision on its own side of the canal, or, if not, that the other boat might, by reasonable prudence, have avoided her.

In Admiralty. Libel for damages.
*A. B. Stewart*, for libelant.
*Hyland & Zabriskie*, for the Ashford and the Bishop.
*Hull Funton*, *Henry D. Donnelly*, and *James J. Macklin*, for the Lizzie Crandall.

BROWN, J. On the morning of the 29th of September, 1889, as the libelant's canal-boat F. W. Whalen was proceeding westward in the Erie canal, in tow of the steam canal-boat Lizzie Crandall, on a hawser of about 375 feet, she came into collision with the canal-boat Bishop, which was upon a hawser of about the same length, and going east in tow of the steam canal-boat Ashford. The place of collision was about a mile and a half to the eastward of Holly, either at the point where the canal there bends to the southward, or a few hundred feet eastward of that point. The tow-path was there upon the northerly side of the canal, and in meeting and passing each other boats bound to the westward were required to take that side, and boats passing to the eastward to go to the right, or on the heel-path side.

More than the usual contradiction is found in the testimony. Almost every detail is a subject of dispute. In the perplexity that arises from so much contradiction, I am constrained to give controlling weight to the place where the Whalen was found, and from which she was taken when raised. Trustworthy testimony shows that when raised her bow was about 20 feet only from the southerly shore. The canal was there about 90 feet wide. There was indeed some opportunity for a change of position from the time the Whalen was struck until she sank, and there is evidence tending fo show such a change; that she was first thrown by the force of the blow upon the tow-path, or northerly side, from which she rebounded, or was shoved off, until she approached near the opposite shore. But I cannot adopt this suggestion. It was the Bishop that after the collision was athwart the canal, so that her stern touched the northerly bank, and it was she that was shoved over towards the northerly shore, so as to let other boats pass, and she subsequently went down between the northerly shore and the Whalen, having just room for that purpose. I am satisfied that neither tug was going at an improper rate of speed, and that there was nothing in the conduct of either tug to have prevented the canal-boats avoiding each other when they were each at the end of hawsers nearly 400 feet long. Both canal-boats were supplied with appropriate and sufficient steering gear, and could be handled with ease. Either could have kept within her own half of the canal. At the time of collision no other boats were in the way. To warrant a decree in favor of the libelant, it must therefore appear, by a fair preponderance of proof, that the Whalen, at the time of collision, was on her own side of the canal; or, if not, that at least the Bishop might, by reasonable prudence, have avoided her. I do not think this burden sustained. The weight of proof is that the Whalen at the time of collision was wholly over upon the Bishop's side of the canal; and, with so little space left for her navigation, I cannot hold the Bishop to blame.

As respects the Lizzie Crandall, I think it is immaterial whether she was 20 feet, more or less, on the southerly side of the center of the canal at the time of the collision. She was nearly 400 feet distant, and any such difference of position in no way affected the duty or the ability of the Whalen not to run into the Bishop in passing her, or to keep on her own side of the canal. It is not necessary to determine the particular reason why the Whalen was not kept upon her own side, since the evidence leaves in my mind no doubt that she had sufficient appliances for easily doing so, and I am satisfied that she did not. The libel must therefore be dismissed; but, inasmuch as in some other particulars the case is not free from doubt, the dismissal will be without costs.