# THE COLUMBIA.

(District Court, E. D. Virginia. November 4, 1909.)

**COLLISION (§ 49*)—STEAM AND SAILING VESSELS MEETING—EVIDENCE OF FAULT —VIOLATION OF RULES BY STEAMER.**

A steamship entering the Elizabeth river for Norfolk in the early morning, but after daylight, *held* solely in fault for a collision with a meeting schooner under the evidence, the weight of which showed that the schooner kept her course until the collision became inevitable, and was making but little headway against a strong flood tide and with a light wind, while the steamship, although bound to keep out of the way, and to avoid even risk of collision by slackening speed, and stopping and reversing, if necessary, under rules 20 and 23 of the inland navigation rules (Act June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), kept

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

her course and speed directly toward the schooner until within 600 feet, and when it was too late to avoid the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 55; Dec. Dig. § 49.*]

In Admiralty. Suit for collision by E. T. Rookes, master of the schooner Milton S. Lankford, against the steamship Columbia. Decree for libelant.

Edward R. Baird, Jr., for libelant.
Williams & Tunstall, for respondent.

WADDILL, District Judge. On the morning of the 2d of February, 1909, a few minutes before 7 o'clock, the Milton S. Lankford, a small two-masted schooner, 63 feet long, 16 feet beam, and of the burden of 40 tons gross, laden with 981 bushels of oysters, while en route from Norfolk to Cape Charles, Va., in the Elizabeth river, just below and in the immediate vicinity of Crany Island Light, came into collision with the steamship Columbia, one of the line steamers of the Chesapeake Steamship Company, plying between Baltimore and Norfolk, bound into Norfolk. The tide was running strong flood, with a comparatively light wind from the southwest, variously estimated at from two to six miles an hour.

The Lankford's contention is that at the time of the collision she was on the port tack, on a course bearing a little north by east; that she observed the approach of the steamer a mile or more away, coming at a high rate of speed; that she maintained her course until within a short distance of the steamer, and, upon seeing a collision was inevitable, she put her wheel hard aport, with a view of lightening the blow of the collision as far as possible; that the steamer, without changing her course, crashed into her, striking her on her port beam, and causing her to sink and become a total loss.

The respondent, on the other hand, insists that at the time of the collision the Lankford was on the regular course down the channel, heading north by west, and the Columbia coming up the channel, about the middle of the channel, on her regular course of S. E. ½ E.; with the Lankford on her starboard; that the Lankford was seen some mile and a quarter away, her movements observed, and the steamer continued on her course, allowing sufficient room to pass the Lankford in safety, when the latter, at a distance of two or three lengths of the Columbia, suddenly changed her course to the eastward, across the bow of the steamer, at a time when it was too late for the collision to be avoided, though everything possible was done by the Columbia to avert the disaster.

There is a sharp conflict between the navigators of the Columbia and the witnesses for the Lankford as to whether or not the latter vessel changed her course, and on what is the correct state of facts in this regard this case largely depends. It is fair to the witnesses to say that on both sides they testified with the utmost frankness and apparent fairness, and were no doubt sincere in the several statements made by them. But necessarily those on the one side or the other must have

been mistaken, certainly as to whether any actual change of course occurred and the time it took place. The conclusion reached by the court, after giving much consideration to the case, is that the evidence preponderates strongly in favor of the Lankford that no change was made in her course other than that conceded by her to have been made when the collision was inevitable. The navigators of the Lankford so testified, and witnesses of the occurrence, entirely disinterested, themselves experienced navigators, in a position to see fully just what did happen, strongly support this statement, and, moreover, testify that at the time in question, by reason of the then condition of the wind and tide, the Lankford could not have changed her course suddenly, as contended by the steamer; the testimony on both sides being that at the time she could have had but little more than steerage way.

The witnesses for the Lankford observed the movements of the steamer, and saw for a short time before the collision that unless she changed her course, or stopped, the vessels coming together was inevitable, as the steamer was bearing down directly upon the Lankford, and it is admitted that she did not change her course, nor did she slacken her speed until within two or three of her lengths away from the schooner, and too late to avoid the collision. There is a slight conflict in the testimony of the respondent as to the distance between the vessels when the change of course of the Lankford was first observed, as contended for, one of respondent's witnesses saying that they were 600 yards apart; but this witness doubtless meant 600 feet, and certain it is that he was at variance with the other witnesses from his ship, who testified as to this fact, and must have been mistaken, as the ship could readily have avoided the accident, had there been a change in the course of the schooner 600 yards away. The undisputed facts of the case are that the two vessels observed the course of each other for at least a mile apart, and, though early in the morning, it was daylight, and they could easily see the movements of each other, as there was nothing to obstruct their view, or obstruct the channel; that the weather and water conditions were favorable; that the vessels were on parallel courses, approaching each other practically head on; and clearly there was no reason for, and there would have been, no collision, had the ordinary rules of navigation been respected and observed.

The steamship was the burdened vessel, and upon her was imposed the obligation of not only avoiding the collision, but the risk of collision. Article 20 of the inland rules of navigation is as follows:

"Art. 20. When a steam vessel and sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel."

And article 23 is as follows:

"Every steam vessel which is directed by these rules to keep out of the way of another vessel, shall on approaching her, if necessary, slacken her speed or stop or reverse."

Act June 4, 1897, c. 4, 30 Stat. 101 (U. S. Comp. St. 1901, p. 2883). The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126; The Richmond (D. C.) 114 Fed. 208, 213; The Elizabeth (D. C.) 114 Fed. 757.

The practically helpless condition of the sailing vessel, by reason of the wind and tide on this occasion, shows the reason for the rule requiring the steamer to keep out of her way. The Columbia could not take chances, or make a close shave, except at her own peril. In doing so, she ran the risk which brought about this accident, and that the rule was intended to avoid. Nor could she, by placing those in charge of the navigation of the sailing vessel in a position of peril and consternation, escape liability for errors of judgment on their part under the circumstances; that is, brought about by the steamer's own negligence and disregard of the rules provided for the mutual safety of both vessels. In the view taken by the court, this largely accounts for the manner in which this collision occurred, and tends in great measure to harmonize the differences between the witnesses as to the movements of the vessels. In other words, the Lankford did change her course, but only after the collision had become inevitable.

The master of the steamship admits that he would not have passed the Lankford more than her length of 63 feet, had she not changed her course, as claimed by him. This is too close for safe navigation, and certainly there were no exigencies, arising from the crowded condition of the channel or otherwise, which made the same necessary. Steamers attempting to pass incumbered craft closely, or in narrow channels, or in a crowded harbor, should only proceed at such speed as to keep the control of their vessels easily in hand. It is conceded that the steamship gave danger signals, put her wheel hard aport, slackened her speed, and reversed her engines, all practically at the same time, and within probably a minute and a half of the collision, one of the steamer's witnesses estimating it at from half to three-quarters of a minute of the vessels coming together, and that the steamer failed to respond to her wheel, and continued on her course and into the schooner. This admission shows the collision was then inevitable, and convinces the court that the change in the schooner's course, on account of which the steamer's danger signals were given, were those admitted by the schooner's navigators to have been made when they believed the vessels' coming together was inevitable, hoping as far as possible to lessen the blow of the collision.

The steamship having failed in its duty, in that it did not seasonably observe the rules of navigation in time to avoid the risk of collision, as well as the collision itself, must bear the burden resulting, if these rules are to be enforced and observed; and it is the duty of the court to see that they are respected.

A decree, therefore, may be entered against the steamship, ascertaining the fault of this collision to be solely that of the steamship.